UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
_____

| | |
|---|---|
| LARRY PAUL ARNDT, JR., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 5:16-cv-00339 |
| | : |
| SLATINGTON BOROUGH; | : |
| POLICE OFFICER WILLIAM BORST; | : |
| SERGEANT DAVID ALERCIA; and | : |
| DETECTIVE TIMOTHY WAGNER, | : |
| | : |
| Defendants. | : |

_____

## **OPINION**

**Defendants' Motion for Summary Judgment, ECF No. 23 – Granted in part**

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　**February 21, 2017**
**United States District Judge**

### I.   Introduction

Defendants Slatington Borough, Police Officer William Borst, Sergeant David Alercia, and Detective Timothy Wagner have filed a motion for summary judgment against Plaintiff Larry Arndt. For the reasons set forth below, summary judgment is awarded in favor of Defendants on Arndt's failure to train claims, but denied in all other respects due to genuine disputes of material fact, which a jury will be required to determine.

1

## II.     Factual Background[1]

The undisputed facts show that on the afternoon of March 10, 2015, after drinking at a neighborhood bar, Arndt returned to his home and began to argue with his mother and daughter about his drinking habit. Defs.' Mot. Ex. 1, Arndt Dep. 54:19-58:25, ECF No. 23-3.[2] At approximately 3:00 p.m., Arndt called 911 and asked them to send four police officers to take him to jail because no one wanted him around and it would make his mother and daughter happy. *See* Defs.' Mot. Ex. 2, Arndt 911 call.

Shortly thereafter, Police Officer William Borst, Sergeant David Alercia, and Detective Timothy Wagner arrived at Arndt's residence and found Arndt sitting on the steps of his front stoop. Arndt Dep. 69:7-9. According to Sergeant Alercia, as the officers approached Arndt and began to question him, Arndt exhibited signs of intoxication; in particular, Sergeant Alercia noted Arndt's speech, demeanor, bloodshot eyes, and the scent of alcohol on his person. Defs.' Mot. Ex. 3, Alercia Dep. 52:9-22, ECF No. 23-5. When the officers asked Arndt what was wrong, Arndt replied that he was arguing with his mother and daughter and was "not doing good." Arndt Dep. 71:2-5. Arndt asked the officers to "take [him] away and arrest [him]." Arndt Dep.71:13-14. The officers replied that they had no reason to do so. Arndt Dep. 71:22-23.

Arndt then stated that he would give the officers a reason to arrest him, and he asked Detective Wagner if he had a lighter. Arndt Dep. 71:25- 72:6. Detective Wagner handed his

---

[1]     Defendants failed to include with their motion a "separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried," contrary to the requirements of the Court's scheduling order entered on August 8, 2016. *See* ECF No. 13.

[2]     Contrary to the Undersigned's policies and procedures, when citing deposition testimony neither Defendants nor Arndt attached a copy of the entire transcript containing the cited testimony. *See* The Honorable Joseph F. Leeson, Jr., Policies and Procedures, https://www.paed.uscourts.gov/documents/procedures/leepol.pdf.

cigarette lighter to Arndt, who then reached in his pocket, retrieved a pipe filled with marijuana, brought the pipe to his mouth, and began to light the marijuana. Arndt Dep. 73:1-2.

The parties dispute what happened next. According to Arndt, as he began to light the marijuana, Detective Wagner smacked his hand, "grabbed [his] wrist and twisted it up and pulled it up [his] back." Pl.'s Br. Opp'n Ex. B., Arndt Dep. 74:22-75:2, ECF No. 25-3. The other two officers then grabbed Arndt's left arm and "[p]ulled it and twisted it and shoved it up [his] back." Arndt Dep. 78:8-10. Arndt testified that as this occurred, he did not offer any resistance to the officers' movements, although he "was tensed—normal reaction, tensing up. . . . My body was tensed." Arndt Dep. 79:20-80:1.

The officers present a different account. According to Detective Wagner, after Arndt began to light the marijuana, Detective Wagner tried to grab the lighter from Arndt's left hand; Arndt then pulled his left hand to the center of his chest to prevent Detective Wagner from controlling his arm. Defs.' Mot. Ex. 4, Wagner Dep. 27:11-16, ECF No. 23-6. Detective Wagner then "got ahold of [Arndt's] wrist." Wagner Dep. 27:17. According to Sergeant Alercia, after Detective Wagner grabbed Arndt's left arm, Sergeant Alercia "grabbed [Arndt's] right arm by his elbow and in front of his bicep." Alercia Dep. 72:22-73:6. In response, Arndt "gave the straight arm" to Sergeant Alercia, pushing him into a retaining wall. Alercia Dep. 73:18-22. Officer William Borst then approached Arndt from the front and pushed Arndt's head down to shift Arndt's center of gravity, which allowed Detective Wagner and Sergeant Alercia to move Arndt's hands behind his back. Alercia Dep. 76:5-9.

It is undisputed that after getting his hands behind his back, the officers handcuffed Arndt, who remained seated throughout the encounter. Alercia Dep. 79:3-80:12. After several requests from the officers, Arndt stood up under his own power and was escorted to the back of

the police car. Alercia Dep. 81:1-3. Once in custody, Arndt was moved from the police station to central booking where he was charged with resisting arrest and various drug offenses; he was released that evening. *See* Defs.' Mot. 5, ECF No. 23-2. According to an incident report prepared by Detective Wagner, he offered medical services to Arndt at the station after he observed that Arndt's left wrist had red marks from the handcuffs; in response, Arndt laughed, asked if Detective Wagner was kidding, and said he was fine. Defs.' Mot. Ex. 6, Wagner Incident Report 3, ECF No. 23-8. In an interview with police a few days after the incident, Arndt stated that he began to feel pain in his arms shortly before his release from the station. *See* Defs.' Mot. Ex. 5, Arndt Interview Video.

Arndt testified that on June 14, 2016, he underwent spinal surgery to address pinched nerves and compressed and bulging vertebrae that, his medical staff informed him, stemmed from the March 10, 2015 incident. Arndt Dep. 31:6-32:21. Arndt also testified that he requires pain medication and physical therapy for injuries to his elbows that he sustained as a result of the incident. Arndt Dep. 38:23-40:10.

Arndt advances the following claims: (1) pursuant to 42 U.S.C. § 1983, a claim that the officers used excessive force against him and failed to intervene to prevent such force in violation of his Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment; (2) pursuant to § 1983, a claim that Defendant Slatington Borough was deliberately indifferent to a need to train and supervise their officers to avoid the constitutional harm Arndt alleges he suffered; (3) tort claims against the officers for assault and battery.

Defendants move for summary judgment on all of Arndt's claims, contending that judgment is warranted in their favor because the force used to restrain and arrest Arndt was clearly reasonable under the circumstances.

**III.    Standard of Review**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the fact "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely disputed—by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**IV.    Analysis**

**A.    There is a genuine dispute over the material facts concerning whether the officers applied excessive force in violation of Arndt's Fourth Amendment rights.**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Excessive force claims that "arise in the context of an arrest or investigatory stop" invoke the protections conferred by the Fourth Amendment, because the "'reasonableness' of a particular seizure depends . . . on how it is carried out." *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the

5

individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Evaluating a claim of excessive force demands "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Because the Fourth Amendment's standard of "reasonableness" "is not capable of precise definition or mechanical application," *see id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)), the totality of the circumstances must be considered to determine if the seizure was justified, *see id.* (quoting *Garner*, 471 U.S. at 8–9). The inquiry is objective: the reasonableness of a seizure must be evaluated "in light of the facts and circumstances confronting [the officers], without regard to their intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). But those facts and circumstances "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry*, 392 U.S. at 20–22). This is so because the standard of reasonableness imposed by the Fourth Amendment accounts for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See id.* at 397.

In addition to those factors enumerated by the Supreme Court in *Graham*, the United States Court of Appeals for the Third Circuit has acknowledged other considerations that may be relevant, including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with

whom the police officers must contend at one time." *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007). In addition, "the fact that the physical force applied was of such an extent as to lead to injury is . . . a relevant factor to be considered." *Sharrar*, 128 F.3d at 822. But none of these factors is alone controlling: "[t]he Supreme Court made clear in *Graham* that each case alleging excessive force must be evaluated under the totality of the circumstances." *See id.*

Defendants contend that under the standard of reasonableness set forth by the Supreme Court in *Graham*, the force used by the officers was objectively reasonable. They contend that the record shows that Arndt "fought against efforts to apply handcuffs," pushed Sergeant Alercia, and "had to be restrained before he could escalate the situation." Defs.' Mot. 10. Defendants claim that the officers applied only "enough force to rotate [Arndt's] arms until he was handcuffed," a "minimal" use of force that was justified under the circumstances. *Id.*

Arndt responds that the record shows that although he "reflexively tensed in response to the actions of the officers . . . he offered no resistance whatsoever." Pl.'s Br. Opp'n 6, ECF No. 25. According to Arndt, "despite the non-threatening nature of the circumstances, the [officers] used such force with [Arndt] that he sustained substantial injuries and even required surgical intervention." *Id.* at 8.

The evidence the parties have cited in connection with Defendants' Motion for Summary Judgment on this claim shows the existence of a genuine dispute over the material facts bearing on the reasonableness of the officers' use of force. As set forth above, Arndt testified that he did not pose a threat to the officers and offered them no resistance, but they nevertheless forcibly twisted his arms behind his back, causing serious injury to his back and elbows. The officers have presented a different account, according to which Arndt fought against them as they applied

only as much force as was necessary to restrain him. A reasonable jury could find Arndt's testimony to be credible or not credible and, based on this testimony, find that the officers' use of force under the circumstances either violated or did not violate Arndt's Fourth Amendment rights. Accordingly, Defendants' motion with respect to this claim is denied.

**B.    There is a genuine dispute over the material facts concerning whether Sergeant Alercia and Officer Borst failed to intervene in violation of Arndt's Fourth Amendment rights.**

"[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "If a police officer . . . fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Id.* (quoting *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (internal quotation marks omitted)). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.*

In support of their motion for summary judgment on this claim, Defendants reiterate their contention that no excessive force was applied to Arndt; it then follows that none of the officers had a duty to intervene to protect Arndt against such force. But, as indicated above, based on Arndt's testimony, a reasonable jury could find that Detective Wagner applied excessive force by twisting and pulling Arndt's arm in such a way as to cause serious injury; such a jury could also find that the remaining two officers, who were standing nearby, failed to intervene to protect Arndt against the force applied by Detective Wagner. Accordingly, Defendants' motion with respect to this claim is also denied.

**C.     The officers are not entitled to qualified immunity.**

Defendants contend that they are entitled to qualified immunity from Arndt's constitutional claims. In support of this contention they once again reiterate their claim that the officers did not apply excessive force to Arndt.

Under the doctrine of qualified immunity, "officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, because this Court has already determined that a reasonable jury could find that the officers' conduct violated Arndt's Fourth Amendment rights, the Court must now consider whether those rights were "clearly established" at the time of the alleged wrongdoing.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). On Arndt's version of the facts, it would have been clear to a reasonable officer that it would be unlawful, when attempting to arrest a non-resisting and nonthreatening person, to twist and pull his arms with enough force to cause severe back and elbow injuries. *See Mehr v. Atl. City*, No. CIV. 12-4499 RBK/AMD, 2014 WL 4350546, at *7 (D.N.J. Sept. 2, 2014) ("[I]t cannot be said as a matter of law that a reasonable officer would not have known that twisting a man's arm until his shoulder dislocated and his arm was broken, and then continuing to tighten handcuffs to inflict greater pain, was in violation of the Fourth Amendment, especially where this individual did not resist being placed in handcuffs and apparently did nothing to provoke the initial physical encounter with the officer."). Accordingly, the officers are not entitled to qualified immunity from Arndt's claims.

**D.      Slatington Borough is entitled to summary judgment on Arndt's *Monell* claim.**

Defendants move for summary judgment on Arndt's claims against the Borough, contending that there are no material facts of record which would "in any way show that there is any deliberate indifference on the part of the Borough in the training of their officers or the actions taken on the date of the incident," nor are there facts "to support any kind of suggestion that any municipal policy maker had knowledge of alleged occurrences or knowledge of prior patterns of violations of constitutional rights or specifically excessive force claims which would place them on notice and require that reasonable steps were taken." Defs.' Mot. 13.

When a municipality is charged with liability for a constitutional violation pursuant to § 1983, liability can attach to the municipality only "where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dep't of Soc. Serv.*, 436 U.S. 658, 694–95 (1978)). Thus, the municipality cannot be held liable simply because it employs a constitutional tortfeasor. However, a municipality may be subject to liability for a constitutional violation committed by an employee if that "employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." *See id.* at 387. Not all inadequate police training gives rise to liability. Rather, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.  "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Arndt contends that "there is evidence . . . that it was the practice of the Defendant Borough to forego training schedules with respect to the use of excessive force, and . . . that the Defendant Borough failed to discipline any of the Defendant Officers who were involved in using excessive force against [Arndt]." Pl.'s Br. Opp'n 10. In support of this contention, Arndt cites Detective Wagner's testimony that he could not recall if he received any training in the use of force in 2014 or 2015. *See* Pl.'s Br. Opp'n Ex. D, Wagner Dep. 47:12-48:19, ECF No. 25-5. Arndt also cites Detective Wagner's testimony that the police chief did not conduct an "official interview" with him about the incident with Arndt, although the chief "read the reports and asked [the officers] what had happened, and [the officers] explained to him what had happened that day." *See* Wagner Dep. 39:25-40:5.

Arndt has not identified any particular omission in the officers' training program, nor has he provided any evidence that a municipal decisionmaker was on actual or constructive notice of any such omission. As for his contention that the Borough failed to discipline the officers after the incident, any such failure could not have been the cause of the alleged constitutional violation. *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001) ("[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred."). Accordingly, summary judgment is granted to Defendants on this claim.

**E.     There is a genuine dispute over the material facts concerning whether the officers committed the torts of assault and battery.**

Defendants also contend they are entitled to summary judgment on Arndt's tort claims of assault and battery. Under Pennsylvania law, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive," because "[t]he reasonableness of the force used in making the arrest determines

11

whether the police officer's conduct constitutes an assault and battery." *See Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994). Because "there are genuine disputes of material fact regarding whether Defendants' use of force vis-à-vis Plaintiff was reasonable," the officers are not entitled to summary judgment on Arndt's assault and battery claims. S*ee Garey v. Borough of Quakertown*, No. 12–0799, 2013 WL 3305222, at *7 (E.D. Pa. July 1, 2013) ("The question of whether an officer is liable for assault and battery under Pennsylvania law turns on whether he or she has used an excessive degree of force, as a matter of Fourth Amendment law, in dealing with an arrestee." (citing *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 870 (E.D. Pa. 2000))).

**V.     Conclusion**

For the reasons set forth above, summary judgment is awarded in favor of Defendants on Arndt's failure to train claims, but denied in all other respects due to genuine disputes of material fact. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*         
JOSEPH F. LEESON, JR.
United States District Judge